## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BRIAN SOZA,

                   *Plaintiff*,

  vs.                                            Case No. 08-2155-EFM

INTERSTATE BRANDS CORPORATION,

                   *Defendant.*

## MEMORANDUM AND ORDER

Presently before the Court is Defendant Interstate Brands Corporation's ("IBC") Motion for Summary Judgment (Doc. 31) for all claims brought against it by Plaintiff Brian Soza ("Soza"). For the following reasons, the Court grants the motion.

## I.  Background

The following facts are either uncontroverted or taken in the light most favorable to the non-moving party.

IBC is a wholesale manufacturer and producer of baked products, and operates a product distribution depot in Kansas City, Kansas.  IBC maintains a Equal Employment Opportunity ("EEO") policy that prohibits discrimination and harassment based on an employee's race.  IBC's EEO policy includes a complaint procedure for employees to report violation's of the EEO policy to IBC's management.

On July 25, 2005, IBC hired Soza, a Mexican-American, as a vacation relief driver.  Just under three months later, Soza became a route sales representative ("RSR"), a position covered by a collective bargaining agreement between IBC and the International Brotherhood of Teamsters Local 955.  As part of the application for employment that Soza signed, he agreed to "immediately report any discrimination, harassment or retaliation against [him] to the Human Resource Manager who is responsible for [his] work location."[1]  In addition, in August 2006, Soza signed an acknowledgment indicating that he had read and understood IBC's EEO policy, which included the policy's complaint procedure.

While employed with IBC, Soza received five disciplinary actions.  It is these actions in which Soza bases his disparate treatment claim.  IBC issued the first of these actions to Soza on June 12, 2006, for poor performance.  This action stemmed from Soza backing his route truck into a garage door at the facility, which caused considerable damage and resulted in his receiving a verbal reprimand.  The verbal reprimand was issued by Soza's supervisor, Alfred Raphel ("Raphel"), a Cuban-American.

On November 9, 2006, Raphel issued Soza his second disciplinary action, a written reprimand, for poor job performance.  In this instance, Raphel disciplined Soza because 96 pieces of off code product[2] were found at various accounts on his route.  Thereafter, on May 29, 2007, Soza received another written reprimand for poor job performance from Harold Johnson ("Johnson"), an African-American district manager at IBC and Raphel's supervisor.  This reprimand

---

[1] Doc. 32, p.3 ¶ 12.

[2] "Off code" product is product that is past its freshness date.  RSR's are responsible for removing expired product from the stores on their routes.  Doc. 32, p.6 ¶ 33.

ensued from Soza's failure to follow job safety analysis procedures, which, because he did not use a dock ladder to lower himself from a dock to a truck, he sustained an injury.

Raphel issued Soza his next two disciplinary actions, each for similar violations.  On July 16, 2007, Soza received a written reprimand for poor performance due to his failure to remove 18 pieces of off code product at an account.  Soza disagrees with the accuracy of the off code product count in this reprimand, but admits that he does not have any evidence to dispute it.  Almost three months later, on October 10, 2007, Raphel issued Soza his fifth disciplinary notice for poor work performance, this time in the form of a three-day suspension.  This suspension was the result of Soza leaving 31 pieces of off code product at one of his accounts.

On August 24, 2007, prior to his suspension but after his first four disciplinary actions, Soza filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, retaliation, and hostile work environment.  On November 6, 2007, Soza filed an amended EEOC complaint in which he included allegations based on his October 10, 2007 suspension.

During his employment with IBC, Soza complained about race discrimination to Johnson on three separate occasions.  The first complaint was sometime in the spring or summer of 2007, when Soza contacted Johnson to complain about the discipline issued by Raphel and about being treated differently than other employees by Raphel.  During this discussion, Soza inquired if such treatment was because of his being Hispanic.  Soza indicated that Johnson became angry with him during this conversation.  Soza complained two additional times to Johnson when Johnson called Soza to follow-up on his earlier complaint.

Just over a month after receiving his suspension for poor work performance, Soza applied for a position with Cintas Corporation ("Cintas"), a company unaffiliated with IBC. Prior to December 5, 2007, Soza had not decided whether he would leave IBC to take a position with Cintas. However, on December 8, 2007, after being offered a position with Cintas, Soza submitted a handwritten letter of resignation to IBC in which he indicated his last day to work was December 15, 2007. After receiving the resignation letter, on December 10, 2007, Raphel asked Soza to complete a Voluntary Resignation Statement, which Soza agreed and indicated his reason for resigning as "unfair work practices - resign before I get fired."[3] The next day, IBC sent a letter to Soza requesting that he withdrawl his resignation and provide the company with the opportunity to address any issues Soza had with his workplace. Soza did not respond, and on January 2, 2008, UPS returned the letter to IBC, as Soza no longer resided at the address IBC had for Soza in its system. That same day, IBC sent another letter to Soza to his new address in which it explained the mishap, and included the previously sent letter. Soza did not respond to this second letter.

## II. Summary Judgment Standard

The Court is familiar with the standards governing the consideration of Summary Judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve

---

[3]Doc. 32, p.12 ¶ 61.

[4]Fed. R. Civ. P. 56(c).

the issue either way."[5]  A fact is "material" if, under the applicable substantive law, it is "essential

to the proper disposition of the claim.[6]  In considering a motion for summary judgment, the Court

must examine all of the evidence in a light most favorable to the nonmoving party.[7]

      The moving party bears the initial burden of demonstrating an absence of a genuine issue of

material fact and entitlement to summary judgment.[8]  The moving party is not required to disprove

the nonmoving party's claim or defense, but must only establish that the factual allegations have no

legal significance.[9]  If this initial burden is met, the nonmovant must then set forth specific facts

showing that there is a genuine issue for trial.[10]  In doing so, the opposing party may not rely on

mere allegations or denials in its pleadings, but must present significant admissible probative

evidence supporting its allegations.[11]  The Court is also cognizant that it may not make credibility

determinations or weigh the evidence when examining the underlying facts of the case.[12]

      Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;"

rather, it is an important procedure "designed to secure the just, speedy and inexpensive

determination of every action."[13]

---

[5]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[6]*Id.*

[7]*Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

[8]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[9]*Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[10]*Celotex*, 477 U.S. at 323.

[11]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[12]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[13]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.  Analysis

#### a. Title VII Discrimination

Soza brings a disparate treatment claim alleging IBC discriminated against him based on his race by treating him differently with respect to discipline than his caucasian coworkers.  IBC argues that Soza cannot establish a prima facie case for racial discrimination, that the disciplinary actions taken against him were for non-discriminatory reasons, and that Soza has no evidence to establish that those reasons were pretextual.  IBC contends that Soza was treated no differently than other similarly situated employees, denies that Soza was disciplined because of his race, and denies Soza's claim that he had no other alternative but to resign his position.  In fact, IBC suggests that the evidence establishes just the opposite in that Soza was explicitly provided an opportunity to retain his position and address any of his perceived concerns, but he declined to do so.  IBC further asserts that Soza's past disciplinary actions resulted solely from Soza's conduct, and that his race was not a factor in its decisions.  IBC further argues that Soza's assertions that IBC has not disciplined or otherwise taken action for the same types of misconduct committed by other caucasian employees are based on mere conjecture or speculation, and are contrary to the evidence.  Accordingly, summary judgment is appropriate.

As Soza has offered no direct evidence of discrimination with respect to his claims, the Court analyzes them under the burden-shifting framework first recognized in *McDonnell Douglas Corp. v. Green*.[14]  Under this approach, a plaintiff must first make out a prima facie case by showing: (1) membership in a protected class; (2) an adverse employment action occurring under circumstances creating an inference of discrimination; and (3) differing treatment among similarly situated

---

[14]411 U.S. 792, 802-04 (1973); *see Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

employees.[15]  For an act to constitute an adverse employment action, it must cause "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[16] "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."[17]  In determining whether two employees are similarly situated, a "court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees."[18]

If the plaintiff is able to establish a prima facie case of discrimination, the burden then shifts to the defendant to demonstrate a legitimate non-discriminatory reason for the adverse employment action.[19]  The defendant's burden is extremely light,[20] and once met, the burden shifts back to the plaintiff to show that the defendant's proffered reason was pretextual.[21]  A plaintiff can satisfy this burden by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable

---

[15]*McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)); *see also Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002).

[16]*Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (internal quotations omitted).

[17]*McGowan*, 472 F.3d at 745.

[18]*Id.*

[19]*See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005) (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000)).

[20]*Goodwin v. Gen. Motors Corp.*, 275 F.3d 1005, 1013 (10th Cir. 2002).

[21]*See Orr*, 417 F.3d at 1149; *see also Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) (To establish an genuine issue of pretext, a plaintiff must demonstrate that a defendant's "proffered non-discriminatory reason is unworthy of belief.")

factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[22]

IBC claims that Soza has failed to satisfy his prima facie burden with respect to his disparate treatment claim. We agree. It is undisputed that Soza, being a Mexican-American, is a member of a protected class and that he was qualified for the position he held with IBC. In addition, while IBC does not dispute that the three-day suspension given Soza for failing to remove off code product was an adverse employment action, it argues that it did not treat Soza any differently than any other similarly situated employee with regard to this action. As a result, Soza's claim fails on the third prong of this analysis. IBC further denies that any other disciplinary action taken against Soza resulted in an adverse employment action.

Here, Soza received four verbal and written reprimands throughout his disciplinary history with IBC. A written warning, or reprimand, is an adverse employment action "*only* if it effects a significant change in the plaintiff's employment status,"[23] such as "if it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities."[24] There is no support in the record to indicate that any of these verbal or written reprimands issued to Soza had or would have any effect on his current or future employment status, and therefore, Soza's claim fails with respect to these actions. Nevertheless, the Court will address each disciplinary action in turn under the third prong of the *McDonnell Douglas* framework.

---

[22]*Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

[23]*E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (emphasis in original).

[24]*Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005).

### 1. July 12, 2006 Verbal Reprimand

Soza claims that he was treated differently from other similarly situated employees in how he was disciplined and requested to submit to a drug screen after causing damage to a garage door at the depot. As his only support for this claim, Soza alleges that three other employees, Kevin Ray ("Ray"), and Thomas Handzel ("Handzel"), each caucasian, and Rad Villafane ("Villafane"), a Hispanic, also caused damage to company property, but whom IBC failed to either discipline them or require them to submit to drug testing as was required of Soza. IBC refutes Soza's claim by arguing that Soza has no evidence to support this claim other than his own deposition testimony that describes how he allegedly heard this information from other IBC employees, which is inadmissible hearsay. In addition, IBC contends, and Soza does not dispute, that it has no record or knowledge of Hanzel, Villafane, or Ray hitting garage doors or otherwise being involved in any accidents prior to or during the time of Soza's employment with IBC. Further, IBC asserts, and Soza again admits, that during the time Soza was employed at IBC, IBC disciplined ten Lenexa-based RSR's for being involved in accidents. Of these ten RSR's, two were Hispanic, of which one was Soza, and the remaining eight were caucasian employees. IBC suggests that the company's disciplinary history regarding accidents clearly undermines Soza's claim. We agree.

Here, Soza has provided the Court with no admissible evidence relating to this claim outside of his own deposition testimony. There is no evidence in the record that Soza has any personal knowledge of Handzel, Villafane, or Ray being involved in an accident, nor has Soza provided the Court with any sworn statement or other evidence from any individual with personal knowledge of

such incidents.[25]  Soza does not contest that IBC has no knowledge of these employees being involved in accidents and not subjected to drug tests, but simply contends that other employees have informed him that the incidents occurred.  Soza, however, fails to provide any support for his claims absent his deposition testimony in which he refers to the inadmissible hearsay of other coworkers. Accordingly, the evidence Soza proffers in support of his claims  would be inadmissible at trial, and cannot be used to defeat summary judgment.[26]  Therefore, Soza has failed to satisfy his burden to demonstrate that he was treated differently than other similarly situated employees.

## 2. November 9, 2006, and July 16, 2007 Written Reprimands

Soza also claims he was treated differently than other similarly situated employees by IBC when it issued him written reprimands for leaving off code product at his accounts while it failed to discipline caucasian employees for the same conduct.  As his only support, Soza identifies three employees, Hanzel, Ray, and Mike Johnson, as RSR's leaving off code product at stores but not receiving discipline.  Soza admits that the only evidence he has that Ray left off code product on an account is based on what other employees have told him.  With respect to Hanzel and Mike Johnson, Soza is unable to identify any specific instances in which they left off code product on their routes, but in his deposition, recalled himself finding upwards of 50-60 pieces of off code product over a

_____

[25]In support of its position, IBC has presented the Court with a declaration from Amie Gifford, HR Manager for IBC, in which she indicates that IBC has no record or knowledge of accidents involving Handzel, Villafane, or Ray during Soza's employment, but identifies specific discipline taken by Raphel against Ray, including a written reprimand, for a vehicle accident that occurred after Soza left the company, for which Ray was required to submit to drug testing.  Ms. Gifford further identifies other disciplinary actions, albeit not for accidents, taken by Raphel against Ray and Handzel for violations of company policy.

[26]*See Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).  "Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because a third party's description of a witness' supposed testimony is 'not suitable grist for the summary judgment mill.'"  *Id.* (citing *Wright-Simmons v. City of Oklahoma City*, 155 5.3d 1264, 1268 (10th Cir. 1998) (quoting *Thomas v. I.B.M.*, 48 F.3d 478, 485 (10th Cir. 1995) (internal quotations omitted))).

period of several months.  Soza, however, has failed to demonstrate that IBC was aware that these employees left off code product in stores.  Moreover, Soza admits that IBC has no record or knowledge of Hanzel, Ray, or Mike Johnson leaving off code product at any of their accounts, and he does not allege that he informed management of these occurrences.  As Soza further admits, IBC disciplined 50 Lenexa-based RSR's during his employment for having off code product, of which only two were Hispanic employees.  We, therefore, conclude that Soza's claim that IBC failed to discipline other similarly situated employees for failing to remove off code product from their accounts is without merit, and accordingly, has failed to establish a prima facie case of discrimination regarding these instances.

### 3.  May 29, 2007 Written Reprimand

Soza alleges that IBC disciplined him for failing to follow job safety practices, which resulted in him injuring himself, while not disciplining other similarly situated employees for the same conduct.  Soza, however, admits that he has no evidence of any other employees failing to follow safely procedures and not being disciplined.  The Court also has found no evidence in support of his claim in the record.  Accordingly, Soza has also failed to establish a prima facie case of discrimination regarding this instance.

### 4.  October 10, 2007 Suspension

We finally turn to Soza's three-day suspension.  IBC admits that this disciplinary action, as opposed to the those previously discussed, had an adverse effect on Soza's employment.  Therefore, Soza has satisfied the first two prongs of the *McDonnell Douglas* analysis with respect to this action.

Accordingly, we turn to the third factor to determine whether Soza was treated differently from other similarly situated employees.[27]   The Court concludes that he was not.

Raphel issued a three-day suspension to Soza because he failed to remove 31 pieces of off code product from an account after Soza had already received written reprimands 2 times previously for the same conduct.  Soza asserts that IBC discriminated against him because of his race because no other similarly situated employee received this degree of discipline for an off code product violation.  However, as just discussed above in subsection 2, Soza had failed to provide this Court with any admissible evidence of any other similarly situated employee committing this same or similar conduct of which IBC was aware or had record of and did not discipline.  Similarly, he has provided no evidence with regard to another employee that has or has not been suspended for similar, repeated conduct.  In fact, when asked in his deposition whether he had any evidence that IBC issued this suspension to him because of his race, he replied "No."[28]  Soza, therefore, has failed to satisfy the third prong of the *McDonnell Douglas* analysis, and his claim fails.

We conclude that Soza has failed to make out a prima facie case of discrimination with respect to his Title VII discrimination claims, and therefore, IBC should be entitled to summary judgment on this claim.[29]

Furthermore, even if we were to assume that Soza had established a prima facie case of discrimination, IBC has demonstrated legitimate, non-discriminatory reasons for the actions it took,

---

[27]*See McGowan*, 472 F.3d at 745.

[28]Doc. 33-3, p.69.

[29]Soza further asserted in his Response to IBC's motion that IBC also treated him differently than caucasian employees by denying him the ability to work lite duty after he suffered a worker's compensation injury.  However, Soza's evidence with regard to this claim is based solely on inadmissible hearsay, and therefore, cannot withstand summary judgment.  Soza's arguments alleging unfair treatment in being required to deliver products to a store on Labor Day 2006 is similarly unpersuasive.

-12-

and Soza has failed to satisfy his burden of showing such actions were pretextual.  For each action, IBC has identified specific conduct where Soza violated company policy or improperly performed his job.  In addition, for every instance where IBC took disciplinary action against Soza, he has either admitted to committing the very acts IBC claims warranted each disciplinary instance, or has admitted that he has no evidence to refute IBC's claims.  Soza has failed to establish any racial animus between the protected act and the adverse action, and therefore, has failed to establish that said actions were the result of racial pretext.

In support of his claim, Soza principally argues that in reviewing the variety of events that occurred throughout Soza's employment history, a jury could reasonably determine that IBC acted against Soza because of his race.  Soza disputes IBC's claim that it had race-neutral reasons for the disciplinary actions it issued, but once again has failed to provide the Court with any evidence to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [IBC's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[30]  As a result, Soza has failed to establish that IBC's reasons taking the disciplinary actions against him were pretextual.

Therefore, based on the forgoing, we conclude that Soza has failed to provide sufficient evidence to establish a prima facie case of race discrimination, and even if he had established a prima facie case, has failed to establish that IBC's proffered reasons for its actions were pretextual

---

[30]*See Argo*, 452 F.3d at 1203; *see also Anderson*, 477 U.S. at 256 (A plaintiff must present significant admissible probative evidence supporting his allegations to withstand summary judgment).

so as to sustain his claim.[31]   Accordingly, we grant summary judgment in favor of IBC with regard to Soza's Title VII discrimination claims.

### b. Title VII Retaliation Claim

Soza also brings a retaliation claim asserting that IBC disciplined him and ultimately forced him to resign not because of his conduct, but in retaliation for a discrimination claim he filed with the EEOC, and for complaining of discriminatory conduct to Harold Johnson ("Johnson"), an African-American district manager at IBC.  IBC argues that summary judgment is appropriate because Soza cannot establish a prima facie case of retaliation.  IBC further argues that even if Soza can establish a prima facie case, he has no evidence to rebut its legitimate reasons for the challenged actions.

Title VII forbids an employer from retaliating against an employee because that employee "has opposed any practice made an unlawful employment practice" by Title VII or because that employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" pursuant to Title VII.[32]   Here, because Soza attempts to establish IBC's retaliatory conduct through indirect or circumstantial evidence, the *McDonnell Douglas* burden-shifting analysis applies.[33]   To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed

---

[31]*See Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (stating that "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings.  To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.").

[32]42 U.S.C. § 2000e-3(a); *see Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-70 (2006).

[33]*See McDonnell Douglas*, 411 U.S. at 802-04; *see also Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007).

between the protected activity and the materially adverse action; and (4) that defendant knew of the retaliation and did not adequately respond.[34]  Once the plaintiff has made out a prima facie case, the employer must then "articulate a legitimate, nondiscriminatory reason for the adverse employment action."[35]  If the employer articulates a legitimate reason for the action, then the plaintiff must demonstrate that the employer's asserted reasons are pretextual.[36]

Soza alleges that IBC retaliated against him through improper discipline after he complained about racial discrimination to Johnson, and after he filed an EEOC charge on August 24, 2007. Soza claims that sometime in the spring or summer of 2007, he complained to Johnson about what he perceived as improper disciplinary actions taken by Raphel against him, and inquired as to whether those actions were taken because of his race.  Soza subsequently filed a complaint with the EEOC in August 2007, alleging retaliation, discrimination based on race, and for being subjected to a hostile work environment.  Soza amended his EEOC complaint on November 6, 2007 to include details of his suspension.  Soza did not speak with any member of IBC management other than Johnson or file a complaint with IBC pursuant to its EEOC policy regarding racial discrimination.

It is undisputed that Soza's filing of an EEOC charge is conduct protected from retaliation under Title VII,[37] and as previously discussed, Soza's October 2007 suspension was an adverse employment action.  Soza, however, has failed to establish a causal connection between his EEOC

---

[34]*Argo*, 452 F.3d at 1202; *see also Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67-70; *Montes*, 497 F.3d at 1176; *Rubio v. Turner Unified School Dist. No. 202*, 523 F. Supp. 2d 1242, 1253 (D. Kan. 2007).

[35]*Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004).

[36]*Id.*

[37]Although we also treat Soza's complaint to Johnson as protected conduct for purposes of this summary judgment analysis, we do not decide whether Soza's conversation with Johnson actually falls within such conduct implicating Title VII's protection.

complaint and his suspension.[38]   As a result, he has failed to establish a prima facie case of retaliation, and summary judgment on this claim is warranted.

Soza can show a causal connection through "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[39] "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."[40] The Tenth Circuit has held that while a "one and one-half month period between protected activity and adverse action may, by itself, establish causation . . . a three-month period, standing alone, is insufficient to establish causation."[41]

Soza claims that his October 10, 2007 suspension issued just over one and one-half months after filing his EEOC complaint is evidence of such close temporal proximity in and of itself to establish a causal connection, and therefore, a prima facie case that his suspension was in retaliation of the EEOC complaint.  Although the Tenth Circuit has indicated that a "one and one-half month period between protected activity and adverse action *may*, by itself, establish causation,"[42] other evidence may vitiate that connection.  Here, we cannot ignore Soza's own deposition testimony and admissions of fact made by Soza with regard to the instant motion.  While Soza suggests that the temporal period between his EEOC claim and his suspension is sufficient, Soza admits that he has

---

[38]While we do not specifically discuss the two non-adverse disciplinary actions Soza received after complaining of discrimination to Johnson, we have reviewed each alleged incident and conclude that he has made no causal connection between the protected action and any subsequent disciplinary action taken against him.

[39]*O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001).

[40]*Id.*

[41]*Id.*

[42]*Id.* (emphasis added).

no evidence that the suspension was issued in retaliation of either his complaint to Johnson or his EEOC charge.  As a result of this admission, Soza must offer additional evidence that the suspension was in retaliation of his EEOC charge to avoid summary judgment, which obviously, he has admitted he cannot do.  Accordingly, Soza has not met his burden in establishing a prima facie case of retaliation.

Even if Soza was able to make a causal connection between his EEOC charge and his suspension, he has presented no evidence that he or anyone else made IBC aware of the alleged retaliatory acts so as to permit it to adequately respond.[43]  Soza contends that he complained to Johnson about racial discrimination sometime in the spring or summer of 2007, but this communication preceded his EEOC charge.  Soza further admits that he did not inform anyone in IBC management, or IBC's HR manager pursuant to IBC's EEO policy,  other than Johnson of any discrimination, nor did he report any claim of retaliation.  As a result, Soza has failed to show that IBC knew of the alleged retaliation and did not adequately respond.  Therefore, he has failed to establish a prima facie case of retaliation.

Even if we were to assume that Soza had established a prima facie case of retaliation, he has failed to demonstrate pretext with regard to IBC's asserted legitimate reasons for its action, and therefore, his retaliation claim could not survive summary judgment.  IBC posits that it issued the three-day suspension to Soza because of his repeated violations of its policy requiring him to remove off code product from his accounts.  Neither filing an EEOC complaint nor a lawsuit immunizes an employee from unsatisfactory job performance or misconduct in the workplace.[44]  Soza had already

---

[43]*See Argo*, 452 F.3d at 1202.

[44]*See Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1391 (8th Cir. 1988), *cert denied*, 488 U.S. 892 (1988).

received two prior written reprimands for the same conduct, and IBC claims that the suspension for Soza's repeated violations of this conduct was appropriate. Simply because Soza has filed an EEOC complaint or this lawsuit does not shield him from any subsequent disciplinary action by IBC because of improper conduct or poor work performance.[45] Soza has failed to demonstrate that IBC's proffered non-discriminatory reason for his suspension is unworthy of belief, and therefore, has failed to establish pretext.

Soza also claims that IBC retaliated against him based on Raphel's increased scrutiny of his work and increased comments that other "people" would believe Raphel over Soza because of the length of time each has been employed with the company. Increased scrutiny, however, absent more, does not rise to an adverse employment action so as to implicate Title VII retaliation.[46] Here, neither Soza nor the record provides any admissible evidence in support of his claim that he was more closely scrutinized by Raphel.   Soza relies on the hearsay of unidentified coworkers that Raphel followed him on his route, along with the general conclusion that Raphel became more hostile to him after the EEOC charge without being able to provide any specific detail of the alleged occurances.   Accordingly, Soza's argument that IBC retaliated through heightened scrutiny is, therefore, without merit.

As a result of the foregoing, we grant summary judgment in favor of IBC with regard to Soza's retaliation claim.

---

[45]*See id.*

[46]*See Green v. New Mexico*, 420 F.3d 1189, 1195 (10th Cir. 2005).

### c.  *Hostile Work Environment*

Soza alleges that IBC subjected him to a hostile work environment based on improper racial comments and daily rants made by his supervisor, Raphel, along with Raphel's failure to discipline other employees when engaging in racially hostile conduct.  Soza, however, admits that he did not complain about Raphel's actions to anyone in IBC's management.

To maintain a claim of a racially hostile work environment, a plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[47]  A "mere utterance of an . . . epithet which engenders offensive feelings in a employee" does not sufficiently affect the conditions of employment to implicate Title VII.[48]  In determining whether a work environment is racially hostile or abusive, the Court looks at all the circumstances, which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[49]

Here, we conclude that there is no evidence that the work environment in which Soza was subjected was so "permeated with discriminatory intimidation, ridicule, and insult" as to rise to a Title VII violation.  Soza points to a limited number of isolated incidents in which he describes improper racial remarks made by Raphel, of which he claims only one of those remarks, an incident in the Fall of 2005, was made in regards to him.  After our review of the record, we find that the

---

[47]*Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted).

[48]*Id.* (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986)).

[49]*Id.* at 23.

comments Soza suggests permeated the work environment were isolated and sporadic, and while they may have been improper, do not rise to such level as to create a racially hostile work environment under Title VII.

As a result of our review of the record and the parties' arguments, we grant summary judgment in favor of IBC with regard to Soza's retaliation claim.

### d. Constructive Discharge

Soza alleges that his resignation resulted from a work environment that was so intolerable that he felt as if he had no other choice but to resign before being fired.  A constructive discharge exists when working conditions become so difficult that a reasonable person would feel compelled to resign.[50]  "Working conditions must be so severe that the plaintiff simply had no choice but to quit."[51]  An employee who voluntarily resigns cannot later claim that he or she was constructively discharged.[52]  The voluntariness of an employee's resignation is judged under an objective standard. A plaintiff need not merely show that the "working conditions at the facility were difficult or unpleasant," but must instead demonstrate that "at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship."[53]

In this case, Soza argues that he was constructively discharged because Raphel made his job unbearable through improper discipline on the basis of his race and through a racially hostile work environment.  Soza further claims that if he had not resigned, he knew that Raphel would soon have

---

[50]*Phillips v. Moore*, 164 F. Supp. 2d 1245, 1256 (D. Kan. 2001); *Redpath v. City of Overland Park*, 857 F. Supp. 1448, 1464 (D. Kan. 1994) (citing *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986)).

[51]*Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004).

[52]*Id.*

[53]*Id.*

fired him. Soza, however, has failed to present any evidence to establish that at the time of his resignation, he had no free choice as to whether he could remain in his position.

As Soza admits, he applied online for a position with Cintas Corporation on November 14, 2007. He received an offer of employment from Cintas, and on December 8, 2007, he submitted a handwritten resignation letter to Raphel, indicating his last day of work would be December 15, 2007. However, as of December 5, 2007, Soza had not yet decided that he would leave IBC to work for Cintas. Clearly, Soza believed it was his free choice as to whether he would remain at IBC in his current position or leave and accept a new position with Cintas. Soza has not alleged any change in his work condition between December 5, 2007 and his resignation on December 8, 2007 to demonstrate that he did not have a free choice in his decision to resign. Moreover, Soza's work conditions were such that he was willing to work an additional week beyond the day he submitted his resignation. In addition, only after Soza submitted his resignation did he complete a "Voluntary Resignation Statement," at Raphel's request, in which he indicated his reason for leaving as "unfair work practices - resign before I get fired." Immediately after receiving this statement, IBC sent a letter requesting that Soza withdraw his resignation and all the company the opportunity to address any issues he had. Based on the record and the foregoing discussion of Soza's claims, we have no doubt that Soza's decision to resign was voluntary. Accordingly, because Soza has failed to demonstrate that "at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship," we grant IBC's request for summary judgment on Soza's constructive discharge claim.

**IV.  Conclusion**

For the reasons explained above, we grant summary judgment to IBC as all of Soza's claims remaining in this action.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant Interstate Brands Corporation's Motion for Summary Judgment (Doc. 31) is hereby GRANTED.

**IT IS SO ORDERED.**

Dated this 17th day of July, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

-22-